1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, Fl. 23
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
          nathaniel@gucovschilaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA PITRE, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>K2 HEALTH PRODUCTS LLC D/B/A INSPIRE<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Yolanda Pitre ("Plaintiff") brings this action on behalf of herself and all others similarly situated against K2 Health Products, LLC d/b/a Inspire ("Defendant").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased Defendants' "Body Wipes for Adult Bathing" and "Inspire Adult Premium Washcloths" (collectively, the "Products")

2.      Defendant markets the Products as being "hypoallergenic." However, unbeknownst to reasonable consumers, the Products contain fragrance—a chemical allergen that dermatologists and toxicologists widely recognize as a common cause of allergic contact dermatitis. In each event, the inclusion of this known allergen renders Defendant's "hypoallergenic" claims false and misleading.

3.      Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; (4) Violations of Consumer Protection Statutes; (5) Breach of Express Warranties; and (6) Unjust Enrichment.

## PARTIES

4.      Plaintiff Yolanda Pitre is a citizen of California residing in San Mateo, California. Plaintiff purchased Defendant's Inspire Adult Premium Washcloths (individually referred to as the "Product") for her personal use during the applicable statute of limitations, with her most recent purchase occurring from Target in November 2024, while residing in San Mateo, California. Prior to making her purchases, Plaintiff saw and relied on Defendant's representations that the Product was "hypoallergenic." Based on the representation, Plaintiff reasonably believed that the Product was formulated to reduce the likelihood of allergic reactions and did not contain commonly recognized fragrance allergens. Plaintiff relied on this representation when she decided to purchase

the Product. Accordingly, this representation was part of the basis of her bargain, in that Plaintiff would not have purchased the Products on the same terms had she known that the representation was untrue. Furthermore, in making her purchases, Plaintiff paid a price premium due to Defendant's false and misleading "hypoallergenic" claims. Plaintiff, however, did not receive the benefit of the bargain because the Product did not, in fact, provide a reduced likelihood of allergic reactions; instead, the Product contained one of the most commonly known allergens, fragrance, that substantially increases the risk of allergic contact dermatitis. Had Plaintiff known that Defendant's representation was false and misleading, Plaintiff would not have purchased the Products or would have paid substantially less for them.

5.      Plaintiff remains interested in purchasing similar products that are truly hypoallergenic. However, she cannot know for certain whether the false labeling of the Products has been or will be corrected. The composition of the Products may change over time. Still, if Defendant continues to make the representations at issue here, Plaintiff will be unable to make informed decisions about whether to purchase the Product when presented with false or misleading information while shopping. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products' marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

6.      Defendant K2 Health Products LLC, is a company organized under the laws of New York with its principal place in Brooklyn, New York, and upon information and belief, at least one member of the proposed Class is a citizen of a state different from at least one member of Defendant. Defendant manufactures, markets, and sells the Products throughout California and the United States.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims for all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different from Defendant. The Products are sold at numerous

retail stores and Plaintiff is seeking to represent a nationwide class. Thus, there are over 100

members in the proposed class and the proposed class has different citizenships from Defendant.

Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also

seeks punitive damages and attorneys' fees and costs. *See Montera v. Premier Nutrition Corp.*, No.

16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), aff'd, 111 F.4th 1018 (9th

Cir. 2024) (noting lodestar after jury trial in consumer protection action was $6,806,031.96). Thus,

Plaintiff estimates that the amount in controversy exceeds $5 million.

8.    This Court has personal jurisdiction over Defendant because it conducts and

transacts business in the State of California, including this District, thereby purposefully availing

itself to the benefits of the forum.  Furthermore, a substantial portion of the events giving rise to

Plaintiff's claims occurred in this District, including Plaintiff's purchasing the Products in this

District.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

conducts substantial business in this District and a substantial part of the events giving rise to

Plaintiff's claims took place in this District.

## FACTUAL ALLEGATIONS

**A.    Overview of Fragrance and Hypoallergenic Claims in Personal Care Products**

10.    Allergic contact dermatitis is an inflammation or irritation of the skin that results

from an allergen coming into contact with the skin. Allergic contact dermatitis is the fifth most

prevalent skin disease in the United States, with direct annual medical costs exceeding $1.5

billion.[1] This condition affects approximately 20% of the United States population. Between 1996

and 2016, the prevalence of dermatitis caused by personal care products increased by almost

300%.[2]

---

[1] Young PA, Gui H, Bae GH. *Prevalence of Contact Allergens in Natural Skin Care Products From US Commercial Retailers*. JAMA Dermatol. 2022;158(11):1323–1325. doi:10.1001/jamadermatol.2022.3180, https://jamanetwork.com/journals/jamadermatology/fullarticle/2795927

[2] Warshaw, Erin M et al. *Contact dermatitis to personal care products is increasing (but different!) in males and females: North American Contact Dermatitis Group data, 1996-2016.* Journal of the American Academy of Dermatology vol. 85,6 (2021): 1446-1455. doi:10.1016/j.jaad.2020.10.003

11.    Personal care products such as soaps, lotions, wipes, and fragrances frequently contain ingredients that may cause allergic contact dermatitis. The risk of contact dermatitis from fragrance chemicals increases substantially among individuals with compromised skin barriers, including those with sensitive skin conditions such as eczema, rosacea, and psoriasis. Use of fragranced products can be particularly problematic for these individuals, exacerbating their conditions over time.

12.    The American Academy of Dermatology ("AAD") has recognized fragrances as a common skin irritant, a source of allergens, and a leading cause of allergic contact dermatitis. Indeed, the AAD estimates that about 2.5 million Americans have fragrance allergies. Peer-reviewed studies have found that approximately 10% of patients with eczema have an allergic reaction to a standard fragrance mix.[3] Alarmingly, the study also found that approximately 1.7–4.1% of the general population had an allergic response to the fragrance mix.[4] Indeed, the American Contact Dermatitis Society named fragrance as the Allergen of the year in 2007.[5] Even the FDA has cautioned that "components of fragrance formulas may have the potential to cause allergic reactions or sensitivities for some people."[6]

13.    Unfortunately, researchers have found that 40% of skincare products labeled "hypoallergenic" contained fragrance formulations classified as allergens by the British Society for Cutaneous Allergy.[7]

**B.    Defendant's Representations and Warranties**

14.    Consumers increasingly seek out and rely on terms like "hypoallergenic" when making purchasing decisions about skin care products. In response to this consumer demand, many

---

[3] Johansen, Jeanne D. *Fragrance contact allergy: a clinical review.* American journal of clinical dermatology vol. 4,11 (2003): 789-98. doi:10.2165/00128071-200304110-00006

[4] *Id.*

[5] Jacob SE, Castanedo-Tardan MP. *Alternatives for fragrance-allergic children.* Pediatr Ann. 2008;37(2):102-103. doi:10.3928/00904481-20080201-04

[6] FDA, *Fragrances in Cosmetics*, https://www.fda.gov/cosmetics/cosmetic-ingredients/fragrances-cosmetics

[7] Hiranput, Siwaporn et al. *Do hypoallergenic skincare products contain fewer potential contact allergens?.* Clinical and experimental dermatology vol. 49,4 (2024): 386-387. doi:10.1093/ced/llad436



companies, including Defendant, have chosen to market their products as "hypoallergenic" without reformulating their ingredients to eliminate fragrance. This is done by design – Defendant knows that, without fragrance, its Products would lose their mass appeal. At the same time, Defendant also knows that "hypoallergenic" claims command a price premium. Instead of choosing between these conflicting approaches, Defendant compromised consumer expectations. Defendant's labeling and marketing of the Products are depicted below:[8][9]



---

[8] The red markings are added for emphasis.
[9] The back of both these products shows "fragrance" in the list of ingredients.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



15.    The term "hypoallergenic" communicates to reasonable consumers that a product is specifically formulated to reduce the likelihood of allergic reactions. Reasonable consumers understand that a "hypoallergenic" product is designed to minimize the presence of common allergens and is formulated to be gentler and less likely to provoke allergic reactions than competing products that do not make such claims.

16.    Merriam-Webster defines "hypoallergenic" as "having little likelihood of causing an allergic reaction," while Dictionary.com defines the term as "designed to reduce or minimize the possibility of an allergic response . . . ."

17.     This understanding is particularly reasonable where, as here, the allegedly hypoallergenic Products include fragrance solely for sensory purposes and not for any functional or therapeutic necessity. The role of fragrance in skin care products is limited to aesthetic appeal and masking the natural scent of active ingredients. In other words, fragrance chemicals serve no essential purpose and do not enhance the efficacy of hand wipes for disinfection or cleaning. The Products' fragrances are included purely for cosmetic or sensory purposes.

18.     Most consumers are unaware that they are allergic to fragrance because their symptoms are mild and go undiagnosed. But even for those who do, they are unable to discern whether the fragrance has any chemical compounds that they might be allergic to.

19.     Consumers are also not required to conduct independent scientific testing or research into undisclosed subcomponents of listed ingredients to verify the truthfulness of express label claims. Instead, it is the responsibility of Defendant to ensure that express labeling claims are truthful and not misleading in light of the Products' actual formulation.

20.     Defendant knows that the fragrance contained in its Products is not innocuous. Indeed, it sells the a similar product as "Fragrance Free." Defendant could have at least put a disclaimer next to the Products indicating that they contained fragrance, but decided not to.

21.     Reasonable consumers have no reason to look at the back label of the Products when presented with the conspicuous representations that the Products are "hypoallergenic." In fact, studies show that only a small fraction of people look at a consumer product's side or back labels before making a purchase.

22.     Even if consumers had a reason to look at the back label to understand the unambiguous "hypoallergenic" representations, the Products' ingredient list would not suffice to dispel any potential for confusion. Reasonable consumers do not walk around with knowledge of the chemical composition of fragrance in their heads. Thus, they would not know the true allergens in the Products by simply looking at the Products' ingredient lists. That discovery requires investigation well beyond what is advertised and knowledge of chemistry beyond that of the average consumer.

**C.     Defendant's False Hypoallergenic Claims Injured Plaintiff and the Class**

23.    Defendant deceptively and misleadingly concealed material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) that the Products contain fragrance chemicals commonly known to be allergens, sensitizers, and/or irritants; (c) that the Products are not "hypoallergenic" and not what reasonable consumers would consider "hypoallergenic"; and (d) that the Products contain chemicals that a reasonable consumer would not expect in a product labeled and marketed as "hypoallergenic."

24.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid a sum of money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived the benefit of the bargain because the Products they purchased were different from what Defendant warranted; (d) were deprived the benefit of the bargain because the Products had less value than what was represented; (e) did not receive products that measured up to their expectations as created by Defendant; (f) used a product that Plaintiff and the members of the classes did not expect or consent to; (g) used a product that was not hypoallergenic; (h) without their knowing consent, used a substance containing fragrance allergens known to cause skin sensitization, irritation, and allergic reactions; and (i) without their knowing consent, used a substance harmful to their health.

25.    Accordingly, Plaintiff and the Class Members have suffered an injury in fact and lost money or property because of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

26.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below as ("collectively, the "Classes"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

> **Multi-State Consumer Protection Subclass:** All persons who, during the maximum period of time permitted by law, purchased Defendant's Products in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware,

District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

**Multi-State Warranty Subclass:** All persons who, during the maximum period of time permitted by law, purchased Defendant's Products in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming.

**California Subclass:** All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Products for their personal use.

27.    The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

28.    Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

29.    ***Community of Interest:***  There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

30.    ***Numerosity:***  While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

31.     ***Existence and Predominance of Common Questions of Law and Fact***:  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes.  These common legal and factual questions include, but are not limited to:

(a)  Whether Defendant's Products were "Hypoallergenic";

(b)  Whether reasonable consumers would understand Defendant's representations and warranties concerning its ingredients to be untrue and misleading;

(c)  Whether Defendant's representations and warranties were material;

(d)  Whether Defendant was unjustly enriched as a result of its unlawful conduct alleged in this Complaint.

(e)   Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(f)  Whether Plaintiff and the members of the Classes are entitled to statutory damages;

(g)  Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

32.     With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*., California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

33.     ***Typicality:***  The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading advertising about the Products' hypoallergenic ingredients, purchased the deceptive Products in reliance on those representations and warranties, and suffered a loss as a result of those purchases.

34.    *Adequacy:*  Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

35.    *Superiority:*  A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress their claims other than through the procedure of a class action.  In addition, even if Class Members could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presented fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with California's consumer protection laws.  If separate actions were brought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

36.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

37.    Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

38.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which it does not have."

39.     Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

40.     Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

41.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers by advertising that the Products are "hypoallergenic" even though they contain well-documented allergens.

42.     Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

43.     On September 3, 2025, Plaintiff notified Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those violations pursuant to Cal. Civ. Code 1782. Defendant failed to correct its business practices or provide the requested relief within 30 days.

44.     Pursuant to California Civil Code 1780(a)(1)-(5) and 1780(e), Plaintiff and the California Subclass seek, in addition to injunctive relief, monetary damages from Defendant, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under.

## COUNT II
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of the Plaintiff and California Subclass)**

45.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

46.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

1      47.    Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. &

2  Prof. Code §§17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

3      48.    Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and

4  lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct.

5  Specifically, Plaintiff purchased the Products for her own personal use.  In so doing, Plaintiff relied

6  upon Defendant's false representations that the Products were "hypoallergenic" when, in reality,

7  the Products contained well-documented allergens.  Plaintiff spent money on the transaction that

8  she otherwise would not have paid had she known the truth about Defendant's advertising claims.

9      49.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or

10  fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

11  act." Cal. Bus. & Prof. Code § 17200.  A business act or practice is "unlawful" if it violates any

12  established state or federal law.  A practice is unfair if it (1) offends public policy; (2) is immoral,

13  unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers.  The UCL

14  allows "a person who has suffered injury in fact and has lost money or property" to prosecute a

15  civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring

16  such an action on behalf of herself or others similarly situated who are affected by the unlawful

17  and/or unfair business practice or act.

18      50.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent

19  business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

20      51.    Defendant violated the UCL's proscription against engaging in **Unlawful Business**

21  **Practices** through its violations of the FAL, and Cal. Bus. & Prof. Code § 17500, *et seq.*; CLRA,

22  Cal. Civ. Code § 1770*, et seq.*

23      52.    Defendant has also violated the UCL's proscription against engaging in **Unfair**

24  **Business Practices**.  Defendant's acts, omissions, misrepresentations, practices and non-

25  disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning

26  of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially

27  injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and

28  unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such

conduct.  There is no utility to misrepresenting the actual composition of the Products to the detriment of consumers. Furthermore, Defendant's false and misleading representations are detrimental to other hand wipes that either do not make similar claims, or if they do, they do not contradict them by adding well-documented allergens. As such, Defendant's misrepresentations and omissions hurt both consumers and the market as a whole.

53.    Plaintiff and the California Subclass Members suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of allergens in the Products.

54.    The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the California Subclass Members.

55.    Plaintiff and the California Subclass Members could not have reasonably avoided their injury or known that the Products' prominent labeling and marketing were, inaccurate and contradicted by Defendant's back-label, fine-print ingredient list. Furthermore, consumers lack the specialized knowledge to determine whether the ingredients listed on the back panel are allergens. As such, they could not have reasonably avoided the injury they suffered.

56.    Pursuant to California Business and Professions Code § 17203, Plaintiff and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

57.    Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and the California Subclass Members are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and

1   restitution are not the same amount. Unlike damages, restitution is not limited to the amount of

2   money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including

3   restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original

4   funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for

5   damages are not equally certain as restitution because claims under the UCL entail fewer elements.

6   In short, significant differences in proof and certainty establish that any potential legal claim

7   cannot serve as an adequate remedy at law.

8       58.    Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at

9   law if, for instance, damages resulting from her purchase of the Products are determined to be an

10  amount less than the premium price of the Products. Without compensation for the full premium

11  price of the Products, Plaintiff would be left without the parity in purchasing power to which she is

12  entitled.

13                          **COUNT III**
                **Violation of California's False Advertising Law**
14                     **Cal. Bus. & Prof. Code § 17500**
                **(On Behalf of Plaintiff and the California Subclass)**
15

16      59.    Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

17      60.    Plaintiff brings this claim on behalf of herself and the California Subclass against

18  Defendant.

19      61.    Defendant's acts and practices, as described herein, have deceived and/or are likely

20  to continue to deceive members of the California Subclass and the public.  As described throughout

21  this Complaint, Defendant misrepresents that the Products are "hypoallergenic" when they contain

22  well-documented allergens.

23      62.    By Defendant's actions, it has disseminated uniform advertising regarding the

24  Products across California and the U.S.  The advertising was, by its very nature, unfair, deceptive,

25  untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such

26  advertisements were intended to, and likely did, deceive the consuming public.

27

28

1

63.     The above-described false, misleading, and deceptive advertising Defendant
disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented
that the Products are "hypoallergenic."

64.     In making and disseminating these statements, Defendant knew, or should have
known, that its advertising was untrue and misleading in violation of California law.  Plaintiff and
the California Subclass Members based their purchasing decisions on Defendant's materially false
and misleading representations and warranties about the composition of its Products.  Plaintiff and
the California Subclass Members were injured in fact and lost money and property as a result, in an
amount to be proven at trial.

65.     The misrepresentations by Defendant of the material facts described and detailed
above herein constitute false and misleading advertising and, therefore, constitute a violation of
Cal. Bus. & Prof. Code § 17500, *et seq.*

66.     Plaintiff and the California Subclass Members seek restitution, attorneys' fees, and
all other relief that the Court deems proper.

67.     Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here.
Legal remedies available to Plaintiff and the California Subclass Members are inadequate because
they are not equally prompt and certain, and in other ways as efficient as equitable relief. Damages
are not equally certain as restitution because the standard that governs restitution is different than
the standard that governs damages. Hence, the Court may award restitution even if it determines
that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and
restitution are not the same amount. Unlike damages, restitution is not limited to the amount of
money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including
restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original
funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for
damages are not equally certain as restitution because claims under the FAL entail fewer elements.
In short, significant differences in proof and certainty establish that any potential legal claim
cannot serve as an adequate remedy at law.

68.    Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Products are determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

**COUNT IV**
**Breach of Consumer Protection Statutes[10]**
**(On Behalf of Plaintiff and the Multi-State Consumer Protection Subclass)**

69.    Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

70.    Plaintiff brings this claim individually and on behalf of the Multi-State Consumer Protection Subclass against Defendant.

71.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Multi-State Consumer Protection Subclass and the public. As described throughout this Complaint, Defendant misrepresents that the Products are "hypoallergenic" when they contain well-documented allergens.

72.    The foregoing deceptive acts and practices were directed at consumers.

73.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

---

[10] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

---

74.     As a result of Defendant's deceptive practices, Plaintiff and the Multi-State Consumer Protection Subclass suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known that the Products were not, in fact, hypoallergenic.

75.     Plaintiff and the Multi-State Consumer Protection Subclass seek to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT V
### Breach of Express Warranty[11]
### (On Behalf of Plaintiff and the Multi-State Warranty Class)

76.     Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

77.     Plaintiff brings this claim individually and on behalf of the Multi-State Warranty Class against Defendant.

78.     Plaintiff and the Multi-State Warranty Class Members formed a contract with Defendant at the time Plaintiff and the Multi-State Warranty Class Members purchased the Products.

79.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging that they are "hypoallergenic."

80.     This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Multi-State Warranty Class and Defendant.

---

[11]While discovery may alter the following, Plaintiff asserts that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2 313; Ga. Code § 11-2-313; HRS § 490:2- 313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2 313; Neb. Rev. Stat. § 2- 313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2 313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws, § 57A 2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46- 2-313; and Wyo. Stat. § 34.1-2-31.

---

81.    As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warranty that the Products are "hypoallergenic."  However, Defendant breached its express warranties regarding the Products by including well-known allergens, thereby rendering the prominent "hypoallergenic" representations false.  Simply, the Products do not conform to Defendant's representations and warranties.

82.    Plaintiff and Class Members reasonably relied on Defendant's express Phypoallergenic warranty in deciding to purchase the Products.

83.    Plaintiff and the Multi-State Warranty Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

84.    Plaintiff and the members of the Multi-State Warranty Class would not have purchased the Products had they known the true nature of the Products.

85.    As a result, Defendant violated the express warranties of the Multi-State Warranty Class.[12] Plaintiff and each member of the Nationwide Class suffered financial damage and injury as a result and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

## COUNT VI
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

86.    Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

87.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law, or, in the alternative, on behalf of the respective state laws of the Nationwide Class, which are substantially similar to the law of unjust enrichment. California

---

[12] Alaska Stat. § 45.02.313; A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2 313; Ga. Code § 11-2-313; HRS § 490:2- 313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2 313; Neb. Rev. Stat. § 2- 313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2 313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws, § 57A 2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46- 2-313; and Wyo. Stat. § 34.1-2-31.

1   law requires: (1) receipt of a benefit; (2) unjust or wrongful retention of the benefit; and (3) at the

2   expense of another.

3        88.    To the extent required, Plaintiff asserts this cause of action in the alternative to legal

4   claims, as permitted by Rule 8.

5        89.    Plaintiff and the Class Members conferred a benefit on Defendant in the form of the

6   gross revenues Defendant derived from the money they paid to Defendant.

7        90.    Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

8        91.    Defendant has been unjustly enriched in retaining the revenues derived from

9   Plaintiff's and the Class Members' purchases of the Products, which retention of such revenues

10   under these circumstances is unjust and inequitable because Defendant omitted that the Products

11   were not hypoallergenic. This caused injuries to Plaintiff and Class Members because they would

12   not have purchased the Products or would have paid less for them if the true facts concerning the

13   Products had been known.

14        92.    Defendant accepted and retained the benefit in the amount of the gross revenues

15   derived from sales of the Products to Plaintiff and Class Members.

16        93.    Defendant has thereby profited by retaining the benefit under circumstances which

17   would make it unjust for Defendant to retain the benefit.

18        94.    Plaintiff and Class Members are, therefore, entitled to restitution in the form of the

19   revenues derived from Defendant's sale of the Products.

20        95.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class

21   Members have suffered in an amount to be proven at trial.

22        96.    Plaintiff and the Class Members have suffered an injury in fact and have lost money

23   as a result of Defendant's unjust conduct.

24        97.    Plaintiff and the Class Members lack an adequate remedy at law with respect to this

25   claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant

26   obtained as a result of its unjust conduct.

27        98.    Legal remedies available to Plaintiff and the Class Members are inadequate because

28   they are not equally prompt, certain, or efficient as equitable relief. Damages are not equally

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    20

certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

99.     Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Products are determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff and the Class Members would be left without the parity in purchasing power to which they are entitled.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a)    For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b)    For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)    For prejudgment interest on all amounts awarded;

f)    For an order of restitution and all other forms of equitable monetary relief;

g)    For injunctive relief as pleaded or as the Court may deem proper;

1          h)       For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees

2      and expenses and costs of suit.

3                              **JURY TRIAL DEMANDED**

4      Plaintiff demands a trial by jury on all claims so triable.

Dated: January 29, 2026            Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC.**

By:   _/s/ Nathaniel H. Sari_
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, Fl. 23
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
            nathaniel@gucovschilaw.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Nathaniel Sari, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Gucovschi Law Firm, PLLC, counsel of record for Plaintiff in this action. Plaintiff alleges that she is a citizen of California, who resides in San Mateo. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the transaction alleged in the Complaint occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, on January 29, 2026.


                                    _/s/ Nathaniel H. Sari_
                                    Nathaniel H. Sari